UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GABRIELLE LISNOFF,
            Plaintiff,


            v.                              C.A. No. 12-197-ML

DR. MICHAEL STEIN,
            Defendant.


MEMORANDUM AND ORDER

This diversity action arose from the publication of the book "The Addict: One Patient, One Doctor, One Year" (the "Book") authored by the defendant, Dr. Michael Stein ("Dr. Stein"). The Book recounts the battle of one of Dr. Stein's patients[1] with her addiction to prescription drugs. The case is brought by Gabrielle Lisnoff ("Lisnoff"), a New York resident and former patient of Dr. Stein's, who asserts that the Book was based, in large part, on confidential disclosures she made to Dr. Stein during treatment sessions. In addition to compensatory and punitive damages, Lisnoff seeks a percentage of all future revenues received by Dr. Stein that are derived from his authorship of the Book.  The matter before the Court is Dr. Stein's motion to dismiss Lisnoff's first

---

[1]    The Author's Note reflects that, although the patient "most extensively" discussed in the Book was imbued with "some experiences and characteristics that belong to other patients," Dr. Stein primarily sought to "portray a patient of mine, a young woman whose story touched me deeply." Michael Stein, The Addict: One Patient, One Doctor, One Year.  (HarperCollins 2009).

amended complaint for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## I. Factual Background and Procedural History

Dr. Stein is licensed to practice medicine in the State of Rhode Island where he specializes in internal and geriatric medicine. Complaint ¶ 4. Lisnoff began treatment with Dr. Stein in late March 2005. Id. ¶ 8. Shortly thereafter, she was admitted to a Suboxone maintenance program overseen by Dr. Stein, id. ¶ 9, in the course of which she attended regular appointments with him several times per month. Id. ¶ 10. According to the Complaint, during those sessions, Lisnoff "was asked detailed questions by [Dr. Stein] concerning her private life, romantic history, work history, childhood and adolescence, and her relationships with family members." Id. ¶ 11.

In late March 2009, Lisnoff discovered the Book while doing online research for a college class. Id. ¶ 12. Lisnoff purchased a copy of the Book and read it. ¶ 13. The Book recounts Dr. Stein's treatment of "Lucy Fields," whom he describes as one of his female patients who sought help for her addiction to prescription medications.

In her Complaint, Lisnoff asserts that "many aspects of the stories contained in the book were taken from what she had told [Dr. Stein] during her treatment sessions or were closely adapted from private facts that she had confidentially shared with him

during her appointments." Id. ¶ 14.  According to Lisnoff, prior to discovering the Book, she had been unaware that  Dr. Stein had written a book based on her treatment. Id. ¶ 16.  Lisnoff also states that she expected that her private conversations taking place during treatment sessions with Dr. Stein would remain private and confidential and that Dr. Stein "would not seek to profit from those patient-physician conversations." Id. ¶ 15. Lisnoff further alleges that Dr. Stein "solicited information regarding her most private, embarrassing, and traumatizing memories in order to surreptitiously obtain material for the [Book]." Id. ¶ 17. Following her discovery of the Book, Lisnoff continued to treat with Dr. Stein for more than a year, through May 2010. Id. ¶ 4.

On March 16, 2012, Lisnoff filed a complaint against Dr. Stein for (Count I) Intrusion upon Seclusion pursuant to R.I. Gen. Laws § 9-1-28.1(a)(1); (Count II) Appropriation of Name or Likeness pursuant to R.I. Gen. Laws § 9-1-28.1(a)(2); (Count III) Unreasonable Publicity to One's Private Life pursuant to R.I. Gen. Laws § 9-1-28.1(a)(3); and (Count IV) Intentional Infliction of Emotional Distress. Complaint (Docket # 1).  On May 29, 2012, Dr. Stein moved for dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6), (Docket # 10), to which Lisnoff objected on June 15, 2012 (Docket ## 14, 15).  On June 21, 2012, Dr. Stein replied to Lisnoff's objection (Docket # 16).

The Court conducted a hearing on Dr. Stein's motion to dismiss

3

the complaint on August 15, 2012. Following the hearing, the Court granted, in part, and denied, in part, Dr. Stein's motion. Count II was dismissed with prejudice, and Counts I, III, and IV were dismissed without prejudice. (Docket # 18). Lisnoff was also afforded an opportunity to file an amended complaint in order to include additional facts to address certain concerns raised by the Court regarding the sufficiency of Lisnoff's pleadings.

On September 14, 2012, Lisnoff filed a first amended complaint (the "Complaint")(Docket # 20) containing several edits, additional allegations, and including, as Exhibit A, a table comparing passages from the Book to corresponding entries from Lisnoff's medical records. On October 29, 2012, Dr. Stein filed a motion to dismiss the Complaint on essentially the same grounds he had raised with respect to the original complaint. (Docket # 22). Lisnoff responded with an objection on December 13, 2012 (Docket # 25), to which Dr. Stein filed a reply on January 4, 2013. (Docket # 27).

## II.  Standard of Review

The only issue for the Court to decide in a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 8 (1st Cir. 2011)(reviewing two recent clarifications by the United States Supreme Court of what

constitutes an adequately stated claim).

In order to withstand a motion to dismiss, a complaint "'must contain sufficient factual matter ... to "state a claim to relief that is plausible on its face."'" Katz v. Pershing, LLC, 672 F.3d 64, 72-73 (1st Cir. 2012)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff is required to "include 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Katz v. Pershing, LLC, 672 F.3d at 73 (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir.2011) (quoting Iqbal, 129 S.Ct. at 1949)).

In determining a motion to dismiss, the Court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor and see if they plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)(internal citations omitted). However, "statements in the complaint that simply offer legal labels and conclusions or merely rehash cause of-action-elements" must be isolated and ignored. Id.; Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012)(noting that the Court must "disregard statements in the complaint that merely offer 'legal conclusion[s] couched as ... fact[]' or 'threadbare recitals of the elements of a cause of

5

action)(internal quotations omitted).

The Court may include in its analysis "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.' Schatz v. Republican State Leadership Comm., 669 F.3d at 55-56 (citing Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n. 2 (1st Cir.2005); Haley v. City of Boston, 657 F.3d 39, 44, 46 (1st Cir.2011)).

**III. The Complaint**

Generally, Lisnoff states that, while she was in treatment with Dr. Stein, he "elicited private facts and stories from her and probed into her personal affairs" and, without her knowledge or permission, he then published a book about Lisnoff's life and history with drug addiction. Complaint ¶ 1. She further states that she expected that her private conversations during the treatment sessions would remain private and confidential and that Dr. Stein "would not seek to profit from those patient-physician conversations." Id. at ¶ 15. Lisnoff also alleges that Dr. Stein "solicited information regarding her most private, embarrassing and traumatizing memories in order to surreptitiously obtain material for the book." Id. at ¶ 17.

With respect to her claim for Intrusion upon Seclusion pursuant to R.I. Gen. Laws § 9-1-28.1(a)(1)(Count I), Lisnoff

6

asserts that the disclosures she made to Dr. Stein were made "in the confines of [Dr. Stein's] medical office, which she considered to be a private space, and she would not have made such disclosures if she had known that [Dr. Stein] was going to publish them in a book he authored." Complaint ¶ 20. Lisnoff also alleges that numerous passages in the Book were taken from entries in her medical records, as detailed in a chart (the "Chart") attached to the Complaint. (Docket # 20 Ex. A).[2] Lisnoff reiterates that allegation in her claim of Unreasonable Publicity to One's Private Life pursuant to R.I. Gen. Laws § 9-1-28.1(a)(3)(Count II). Complaint ¶ 25.  Finally, regarding her claim for intentional infliction of emotional distress (Count III), Lisnoff asserts that Dr. Stein published private facts which she had disclosed during her treatment in the expectation that they would remain private; that Dr. Stein failed to disclose he was going to publish such facts; and that "after reading the book and realizing a substantial portion of the stories contained therein were based upon private facts disclosed by [Lisnoff] during her treatment sessions with [Dr. Stein], she suffered severe emotional distress." Id. ¶¶ 28, 29, 31.

---

[2]

The referenced Chart contains a column of 17 separate passages from the Book next to a column of corresponding entries from Lisnoff's medical records.

## IV.  The Parties' Positions

(A) The Motion to Dismiss

With respect to Count I, Dr. Stein points out that the Complaint "contains no new allegations supporting a claim that [Dr. Stein] intruded on the physical solitude or physical seclusion of the plaintiff." Def.'s Mem. 3 (Docket # 22-1).  Dr. Stein argues that the allegations only underscore that Lisnoff's alleged injury arises from the publication of the Book, not from interactions between the parties. Id.  He concludes that, because Lisnoff alleges no physical intrusion and is not identifiable in the Book, the publication is protected and the intrusion claim fails as a matter of law. Id.

Regarding Count II, Dr. Stein asserts that Lisnoff again "fails to allege that any reasonable reader did or would understand that the [Book] was about Lisnoff. Id. He argues that "the critical issue is whether a reasonable reader would understand" that the character in the book was based on Lisnoff, not whether the Book was inspired by, or based on, a particular person. Id. Dr. Stein also suggests that, if the facts cited by Lisnoff were sufficient to state a claim, "health and safety and social case studies that provide important information to the public would suddenly become actionable," which is a restriction not permitted by Rhode Island law or the First Amendment. Id. In his reply to Lisnoff's objection (Docket # 27), Dr. Stein reiterates that, in order to bring a claim

for a violation under 9-1-28.1(a)(3), Lisnoff must allege that a reasonable person would understand that the facts disclosed in the book were about Lisnoff.

Finally, with respect to Lisnoff's claim of intentional infliction of emotional harm, Dr. Stein contends that (1) the claim is duplicative and/or derivative; (2) Dr. Stein's conduct was not "extreme and outrageous;" and (3) the Complaint fails to allege that Lisnoff suffered physical symptoms as result of Dr. Stein's conduct. Id. 18-19.

(B) Lisnoff's Objection

Lisnoff re-emphasizes that she does not seek to preclude Dr. Stein from selling the Book; rather, she seeks "damages for the unauthorized publication of intimate details of her life which she revealed to [Dr. Stein] during the course of her medical treatment by him." Pltf.'s Obj. 7 (Docket # 25).

With respect to her claim asserted in Count I, Lisnoff concedes that "some invasion of a person's physical solitude or seclusion must have occurred." Id. at 10. She contends, however, that she, like any person of ordinary sensibilities, "had an expectation that the medical offices where her consultations with [Dr. Stein] occurred were private and that all occurrences therein were protected by confidentiality." Id. at 11. She also asserts that she "would have never disclosed many of her private facts to [Dr. Stein] in such elaborate detail had she been aware he would be

publishing a book about her without her permission or knowledge."
Id.

Regarding Count II, Lisnoff rejects Dr. Stein's contention
that the Rhode Island statute requires her to allege "that a
reasonable reader would understand that the Book or any part
thereof is about her." Id. at 9. Lisnoff also suggests that Dr.
Stein "utilized private facts revealed by [her] during her
confidential treatment sessions as a means to compile notes for use
in [his] book." Id. at 10.

Finally, in support of her claim for intentional infliction of
emotional distress, Lisnoff argues that this claim is valid - even
if it is deemed derivative of Counts I and II - because she has
sufficiently alleged those claims. Id. at 13. She also suggests
that, pursuant to Rule 8 of the Federal Rules of Civil Procedure,
she may "bring claims against [Dr. Stein] based on alternative
theories of liability." Id. at 14. Lisnoff makes no allegations
that she has suffered any physical symptoms as a result of Dr.
Stein's alleged conduct.

   **V.   Discussion**

   (A) Right to Privacy - R.I. Gen. Laws § 9-1-28.1(a)(1).

   Section 9-1-28.1 was enacted in 1980, "making it 'the policy
of this state that every person shall have a right to privacy.'")
Pontbriand v. Sundlun, 699 A.2 856, 863 (R.I. 1997). Specifically,
Section 9-1-28.1(a) affords "protection to the four interests

10

encompassed within the 'common law tort' recognized by the Restatement though not recognized as such in this state." Id. (citing Section 652A of the Restatement (Second) Torts). Section 9-1-28.1(a)(1)[3] protects "[t]he right to be secure from unreasonable intrusion upon one's physical solitude or seclusion." Id. In order to state a claim under that provision, a plaintiff must assert an "invasion of something that is entitled to be private or would be expected to be private," Section 9-1-28.1(a)(1)(i)(A), and that the invasion would be "offensive or objectionable to a reasonable man." Section 9-1-28.1(a)(1)(i)(B).

As set forth explicitly in Section 9-1-28.1(a)(1), an individual has the right to be secure from unreasonable intrusion upon one's <u>physical</u> solitude or seclusion. R.I. Gen. Laws §

---

[3] R.I. Gen. Laws § 9-1-28.1(a)(1) provides as follows:
(a) Right to privacy created. It is the policy of this state that every person in this state shall have a right to privacy which shall be defined to include any of the following rights individually:

   (1) The right to be secure from unreasonable intrusion upon one's physical solitude or seclusion;
      (i) In order to recover for violation of this right, it must be established that:
         (A) It was an invasion of something that is entitled to be private or would be expected to be private;
         (B) The invasion was or is offensive or objectionable to a reasonable man; although,
      (ii) The person who discloses the information need not benefit from the disclosure.

9-1-28.1(a)(1).(Emphasis added). No reasonable expectation of privacy exists with respect to "activities taking place outside [an individual's] residence in a location visible to any passersby." Swerdlick v. Koch, 721 A.2d 849, 857 (R.I.1998)(rejecting claims of invasion of privacy against defendants who had surveilled and photographed certain activities occurring outside the plaintiffs' home.)

The protection against an invasion of "one's physical solitude or seclusion" does not apply "when one ventures outside his or her house into public view." Swerdlick v. Koch, 721 A.2d at 857 (emphasis added). The Rhode Island Supreme Court in Swerdlick specifically referred to commentary in the Second Restatement of Torts, which explained that "a defendant is subject to liability [for intrusion upon seclusion] only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Swerdlick v. Koch, 721 A.2d at 857 n. 11 (quoting The Restatement (Second) Torts, § 652B cmt.c, at 379-80 (1977)(providing examples)).

In DaPonte v. Ocean State Job Lot, Inc., the Rhode Island Supreme Court noted that "once the person leaves the seclusion of the home and enters the public domain, the burden is upon the party alleging an unreasonable intrusion upon his or her physical solitude or seclusion to establish that 'thrown about his [or her] person or affairs' is an affirmative seclusion to merit an

objective expectation of privacy." DaPonte v. Ocean State Job Lot, Inc., 21 A.3d 248, 252 (R.I. 2011)(holding that a fleeting touch of the plaintiff's outer garment by her supervisor - while in a public place - was insufficient to raise a privacy claim under Section 9-1-28.1(a)(1))(quoting Swerdlick v. Koch, 721 A.2d at 857 n. 11). As an example of a "private seclusion thrown about a person in a public place," the DaPonte Court again relied on the commentary in the Second Restatement of Torts, which further explained that "'[e]ven in a public place, *** there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.'" DaPonte v. Ocean State Job Lot, Inc., 21 A.3d at 252 n. 4.

Other cases interpreting Section 9-1-28.1(a)(1) established a rightful expectation that prescription drug records be kept confidential and that their unauthorized disclosure was "offensive or objectionable to a reasonable person." Washburn v. Rite Aid Corp., 695 A.2d 495, 500 (R.I. 1997).

On the other hand, in Pontbriant v. Sundlun, the Supreme Court of Rhode Island rejected claims of bank depositors against the Governor of Rhode Island and others for releasing the depositors' account information to the media. Because there were "no allegations in the complaint that the information possessed by the Governor was acquired through any wrongful or improper means," the

Court concluded that "the depositors have not stated a cause of action for intrusion under § 9-1-28.1(a)(1)." <u>Pontbriand v. Sundlun</u>, 699 A.2 at 863-864 (citing <u>Harris by Harris v. Easton Publishing Co.</u>, 335 Pa.Super. 141, 483 A.2d 1377 (1984) (no tort of invasion of privacy shown because the facts published were not obtained by intentional intrusion)).

Taking the facts alleged in the Complaint as true, and drawing all reasonable inferences in Lisnoff's favor, it appears that Dr. Stein, a medical doctor of some experience, published a book that was based, at least in significant part, on numerous confidential disclosures of Lisnoff, one of his patients. From the submissions of the parties, it appears that the writing and publication of the Book occurred while Lisnoff was still in treatment with Dr. Stein and that they occurred without Lisnoff's knowledge until she discovered the Book's existence by chance.

The allegations raised in Lisnoff's Complaint include that she made certain "disclosures" to Dr. Stein "in the confines of [his] medical office, which she considered to be a private space." Complaint ¶ 20. She further asserts that "she would not have made such disclosures if she had known that [Dr. Stein] was going to publish them." <u>Id.</u> Lisnoff also asserts that Dr. Stein solicited information about her memories "in order to surreptitiously obtain material for the book." In other words, Lisnoff's allegations amount to an assertion that the therapy sessions in Dr. Stein's

14

office constituted a "private seclusion" related to her person and affairs, Swerdlick, 721 A.2d at 857, and that the information obtained from her by Dr. Stein "was acquired through [a] wrongful or improper means," Pontbriand, 699 A.2 at 863-864.

As such, the Court is of the opinion that, construing the facts of the Complaint in the light most favorable to the plaintiff, Lisnoff's allegations are sufficient to withstand Dr. Stein's motion to dismiss.

(B) Unreasonable Publicity to One's Private Life

Pursuant to Section 9-1-28.1(a)(3)[4], an individual is guaranteed "[t]he right to be secure from unreasonable publicity to one's private life." R.I. Gen. Laws § 9-1-28.1(a)(3); Pontbriand v. Sundlun, 699 A.2 at 864.

To establish that a fact is "private," a plaintiff is required

---

[4]

R.I. Gen. Laws § 9-1-28.1(a)(3) affords protection for the following:

The right to be secure from unreasonable publicity given to one's private life;

(i) In order to recover for violation of this right, it must be established that:

(A) There has been some publication of a private fact;

(B) The fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities;

(ii) The fact which has been disclosed need not be of any benefit to the discloser of the fact. R.I. Gen. Laws § 9-1-28.1(a)(3)

to "'demonstrate that [she] actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it.'" <u>Lamarque v. Centreville Sav. Bank</u>, 22 A.3d 1136, 1140 (R.I. 2011)(quoting <u>Swerdlick v. Koch</u>, 721 A.2d at 858). Put another way, "a privacy claim must be 'bona fide and of a type that a reasonable person would expect to be observed.'" <u>Swerdlick v. Koch</u>, 721 A.2d at 858 (quoting <u>Pontbriand v. Sundlun</u>, 699 A.2d at 865)).

In her Complaint, Lisnoff alleges that Dr. Stein, while still in a doctor-patient relationship with her, decided - without prior notice to Lisnoff - to publish a book containing numerous facts Lisnoff would recognize as private experiences she had previously disclosed to Dr. Stein in a confidential therapy setting. Lisnoff further asserts that the Book contains facts that she expected to remain private and that numerous passages in the Book were taken from entries in her medical records. The Court notes that Lisnoff does not claim that the Book identifies her as "Lucy Fields" or that any third party has recognized her as the patient on whom the Book was based. However, the Court is of the opinion that Lisnoff's allegations that Dr. Stein published facts she reasonably expected to remain private and confidential, when examined under the lenient Rule 12(b)(6) standard, are sufficient to state a claim for which relief can be granted.

16

(C) Intentional Infliction of Emotional Distress

Rhode Island recognizes a claim for intentional infliction of emotional distress. Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1187 (1st Cir. 1996)(noting that the cause of action is patterned after § 46 of the Restatement (Second) of Torts (1965)). In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove "extreme and outrageous conduct that intentionally or recklessly resulted in causing her severe emotional distress." Vallinoto v. DiSandro, 688 A.2d 830, 838 (R.I. 1997); Andrade v. Jamestown Housing Auth., 82 F.3d at 1187; Wright v. Zielinski, 824 A.2d 494, 499 (R.I. 2003)("To prove intentional infliction of emotional distress, the plaintiff must allege and prove that the defendant intentionally or recklessly engaged in extreme and outrageous conduct, resulting in the plaintiff's severe emotional distress.").

In addition, the plaintiff is required to allege and prove "physical symptomatology resulting from the alleged improper conduct." Id.; Francis v. American Bankers Life Assur. Co. of Florida, 861 A.2d 1040, 1046 (R.I. 2004)("Both the torts of negligent and intentional infliction of emotional distress require that plaintiff allege and prove that medically established physical symptomatology accompany the distress."); Castellucci v. Battista, 847 A.2d 243, 249 (R.I. 2004)(stating that "physical symptomatology is a required element" for a claim of intentional infliction of

emotional distress.); <u>Vallinoto v. DiSandro</u>, 688 A.2d at 838("[P]laintiff must prove physical symptomatology resulting from the alleged improper conduct."); <u>Adams v. Uno Restaurants, Inc.</u>, 794 A.2d 489, 492 (R.I. 2002)(Plaintiff must establish that "he or she experienced physical symptoms of their alleged emotional distress."); <u>Hoffman v. Davenport-Metcalf</u>, 851 A.2d 1083, 1089 (R.I. 2004)(plaintiff must prove physical symptomatology to prevail on claim for intentional infliction of emotional harm); <u>DiBattista v. State</u>, 808 A.2d 1081, 1089 (R.I. 2002) (claims of intentional and negligent infliction of emotional distress could not survive summary judgment motion where plaintiffs relied only on generalized assertions of physical symptomatology in their amended complaint.); <u>Clift v. Narragansett Television L.P.</u>, 688 A.2d 805, 813 (R.I. 1996)(holding that defendant was entitled to summary judgment on claim of intentional infliction of emotional distress in the absence of any allegations of resulting physical symptomatology in the complaint).

Lisnoff alleges in Count III that Dr. Stein's conduct - the publication of the Book, which contained private facts she had confided to him during treatment - was "extreme and outrageous," and that it caused her to suffer "severe emotional distress." Complaint ¶¶ 30,31.

Although Lisnoff repeatedly emphasizes that the facts published about her are offensive or objectionable and that the

publication of the Book has caused her to suffer severe emotional distress, neither the Complaint nor Lisnoff's memorandum refer to any physical manifestations of her alleged distress. Even if every fact asserted in the Complaint is taken as true, the complete absence of any assertions that Dr. Stein's alleged conduct resulted in physical symptomatology - particularly where Lisnoff was given an opportunity to flesh out the facts on which her claims were based - cannot pass muster on a motion to dismiss pursuant to Fed.R.Civ. P. 12(b)(6).

### Conclusion

For the reasons stated herein, Dr. Stein's motion to dismiss the Complaint is DENIED with respect to Counts I and II, and GRANTED with respect to Count III.


SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge

February 15, 2013